1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   FEDERAL INSURANCE COMPANY, an  )   Civil No. 05cv1853-L(LSP)
     Indiana corporation,                )
12                                        )
                          Plaintiff,      )   **ORDER**
13                                        )
     v.                                   )   **(1) GRANTING PLAINTIFF'S**
14                                        )   **MOTION FOR PARTIAL**
     GOLDEN EAGLE INSURANCE              )   **SUMMARY JUDGMENT; AND**
15   CORPORATION, a California            )
     corporation,                         )   **(2) DENYING DEFENDANT'S**
16                                        )   **MOTION FOR SUMMARY**
                          Defendant.      )   **JUDGMENT**
17                                        )
     _____ )
18

19        In this action Plaintiff Federal Insurance Company ("Federal") seeks reimbursement from

20   Defendant Golden Eagle Insurance Corporation ("Golden Eagle") for its defense and indemnity

21   payments to their mutual insured Emerald Bay Community Association ("Emerald Bay") in the

22   underlying state court lawsuit (the "Lopez Action").  In the course of the Lopez Action, Federal

23   allegedly expended in excess of $3.3 million for Emerald Bay's defense and settlement.  The

24   parties have filed cross-motions for summary adjudication which focus on Golden Eagle's duty

25   to defend.  For the reasons which follow, Federal' motion for partial summary judgment is

26   **GRANTED**, and Golden Eagle's motion for summary judgment is **DENIED**.

27   / / / / /

28   / / / / /

1       It is undisputed that Federal and Golden Eagle both issued insurance policies to Emerald

2   Bay, which was named as a defendant in the Lopez Action.  The plaintiffs in the Lopez Action

3   alleged that Emerald Bay, their homeowners' association, and various members of its board of

4   directors wrongfully delayed and ultimately denied the plaintiffs' plans to construct a pool, spa

5   and landscaping on their residential property, while permitting other residents to engage in

6   similar remodeling projects.  (Tellerine Decl. Exh. 1 at 7-8.)  In the process, the plaintiffs

7   alleged, Emerald Bay's directors publicly disparaged them, referred to them in derogatory and

8   degrading terms and suggested to the Emerald Bay community that the plaintiffs were dishonest,

9   underhanded, untrustworthy, lacked integrity and intentionally withheld information from

10  Emerald Bay regarding their project.  (*Id*. at 8, 14-16.)  The plaintiffs also alleged that Emerald

11  Bay delayed its approval of the project, eventually approved it, then withdrew its approval after

12  the work had started, and ultimately caused all work to stop by denying the workmen access to

13  the property.  They maintained that this deprived them of the use of their property, and caused

14  ongoing property damage, including damage to fixtures and equipment that were not designed to

15  withstand exposure to the elements.  (*Id*. at 26.)  Plaintiffs alleged six causes of action against

16  Emerald Bay and its directors:  two causes of action to enforce the CC&Rs as equitable

17  servitudes and prevent Emerald Bay from interfering with the project, violation of the Unruh Act

18  (discrimination based on national heritage and ancestry), breach of contract, breach of fiduciary

19  duty, and negligence.  As to each cause of action they requested, among other things, damages

20  according to proof.

21      Emerald Bay tendered defense of the action to Federal and Golden Eagle.  Initially both

22  insurers agreed to defend subject to reservation of rights.  Golden Eagle's policy, Commercial

23  General Liability Policy No. CCP-527406-00 (the "Policy"), includes coverage for property

24  damage and personal injury subject to definitions, exclusions and limitations.  (Dawe Decl. Exh.

25  19 at 190.)  Golden Eagle agreed to defend based on these coverages.  (*Id*. Exh. 17.)  Federal

26  contends that Golden Eagle nevertheless failed to participate in Emerald Bay's defense, by

27  paying only a small fraction of defense costs.  Upon reviewing the second amended complaint in

28  the Lopez Action, Golden Eagle formally withdrew from defense, claiming the Policy did not

05cv1853

1  cover the Lopez Action.[1]  Golden Eagle maintained that the alleged property damage did not

2  result from an "occurrence" as defined by the Policy, and that the Policy did not provide

3  coverage for property damage arising from postponement of construction or soil slippage.

4  (Birney Decl. Exh. 1 at 3-6.)  As to personal injury, it asserted that the initial coverage

5  determination was erroneous because it erroneously construed the Lopez Action to implicate an

6  "invasion of the right to occupancy" of the plaintiffs' dwelling.  (*Id*. at 7.)

7        Federal defended the action at the expense of over $1.3 million, and later settled it for $2

8  million.  Although it recovered approximately $245,000 from Golden Eagle for the defense

9  costs, Federal maintains this is much less than what is owed.  Federal filed the instant action

10  against Golden Eagle for equitable contribution for defense fees and costs, equitable contribution

11  for indemnity, equitable subrogation for defense fees and costs, and equitable subrogation for

12  indemnity.  Before the court are the parties cross-motions.  Federal filed a motion for partial

13  summary judgment on the issues whether Golden Eagle owed a duty to defend in the Lopez

14  Action and whether it breached this duty.  Golden Eagle filed a cross-motion for summary

15  judgment arguing that all causes of action fail if the court finds as a matter of law that Golden

16  Eagle had no duty to defend.

17        Federal Rule of Civil Procedure 56(c) empowers the court to enter summary judgment on

18  factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive

19  determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).

20  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and

21  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

22  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.

24

25  [1]     In its motion Golden Eagle relies on the second amended complaint.  (Golden
26  Eagle Ins. Corp.'s Mem. of P.&A. in Supp. of Its Mtn Pursuant to Fed. R. Civ. P. R. 56, filed Nov. 7, 2006 ("Golden Eagle Mtn"), *passim*.)  As compared to the initial complaint, the second amended complaint added certain defendants and causes of action for breach of the implied
27  covenant of good faith and fair dealing and interference with easement.  (Tellerine Decl. Exh. 10.)  However, with respect to the allegations regarding disparagement and property damage, the
28  second amended complaint does not materially differ from the initial complaint.  (*See, e.g., id*. at 106, 114, 115, 128.)  Neither party argues to the contrary.

05cv1853

2001).  This order is based on the Policy and the complaint filed in the Lopez Action, the contents of which are undisputed.[2]

California substantive law[3] applies in this diversity action.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under California law,

> It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.  The insurer must defend any claim that would be covered if it were true, even if in fact it is groundless, false, or fraudulent.

*N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 637 (2006) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) and citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 273 (1966)) (internal quotation marks omitted).  "[T]he duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded."  *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005).

> Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.  But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered.  Moreover, that the precise causes of action pled in the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.

*Id*. (citations omitted).  The duty to defend is excused only where "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.* N.

---

[2]  Both sides filed extensive evidentiary objections.  Only admissible evidence may be considered in deciding a motion for summary judgment.  Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).  The court relied on the Policy, attached as an exhibit to the declaration of Peggy Kirkley.  (Dawe Decl. Exh. 19.)  Although Golden Eagle objected to Ms. Kirkley's declaration, it did not object to the attached Policy.  In addition, this order cites to Golden Eagle's letters initially agreeing and then declining to defend.  (Birney Decl. Exh. 1 & Dawe Decl. Exh. 17.)  Golden Eagle objects to these documents as irrelevant to the determination whether it owed a duty to defend.  They are not cited for this purpose, but as factual background and to show that Golden Eagle formally withdrew from defense.  Since the court decided the motions based on facts which are not subject to either party's objections, the objections are overruled as moot.

[3]  "[A] federal court interpreting state law is bound by the decisions of the highest state court. . . .  Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises."  *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) (citations omitted).

4

1    *Am. Bldg. Maint.*, 137 Cal. App. 4th at 640 (quoting *Montrose Chem. Corp. v. Super. Ct. (Can.*

2    *Universal Ins. Co., Inc.)*, 6 Cal. 4th 287, 300 (1993)) (internal quotation marks and brackets

3    omitted, emphasis in original).

4           "On a motion for summary judgment regarding its duty to defend, the insurer must be

5    able to negate any potential coverage as a matter of law." *N. Am. Bldg. Maint.*, 137 Cal. App.

6    4th at 640.  Consistently, the parties bear an asymmetrical burden:

7               To prevail, the insured must prove the existence of a *potential for coverage*, while
                the insurer must establish *the absence of any such potential*.  In other words, the
8               insured need only show that the underlying claim *may* fall within policy coverage;
                the insurer must prove that it *cannot*.  Facts merely tending to show that the claim
9               is not covered, or may not be covered, but that are insufficient to eliminate the
                possibility that resultant damages (or nature of the action) will fall within the scope
10              of coverage, therefore add no weight to the scales.  Any seeming disparity in the
                respective burdens merely reflects the substantive law.

11

12   *Id.* at 637-38 (quoting *Montrose*, 6 Cal. 4th at 300)) (internal quotation marks and brackets

13   omitted).  "Any doubt as to whether the facts give rise to a duty to defend is resolved in the

14   insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

15          The analysis is not different if the duty to defend is triggered by more than one insurer's

16   policy.  "Each insurer's duty to defend must be assessed independently, since the duty of each is

17   independent of whatever duty another might have." *Wausau Underwriters Ins. Co. v. Unigard*

18   *Sec. Ins. Co.*, 68 Cal. App. 4th 1030, 1033 (1998).  "An insurer's duty to provide defense

19   services inures to the benefit of other obligated insurers and an insurer breaching the defense

20   duty should not be allowed to profit at the expense of an insurer faithfully discharging its

21   obligation." *Md. Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1829 (1996) (citing

22   *Cont'l Cas. Co. v. Zurich Ins. Co.*, 57 Cal. 2d 27, 37 (1961)).

23          Federal argues that Golden Eagle owed a duty to defend because the Policy provides

24   personal injury coverage for "[o]ral or written publication of material that slanders or libels a

25   person . . ." (Dawe Decl. Exh. 19 at 203; *see also id.* at 196), and because the Lopez Action

26   alleged the insured referred to the plaintiffs in a defamatory manner.  The plaintiffs in the Lopez

27   Action did not assert a claim for slander or libel.  However, this is not required for a duty to

28   defend to arise.  Coverage turns not on the technical legal cause of action pleaded by the third

1    party, but on the facts alleged in the underlying complaint or otherwise known to the insurer.

2    *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001); *see also Scottsdale*, 36

3    Cal. 4th at 654.

4         Golden Eagle largely relies on *Upper Deck Company v. Federal Insurance Company*, 358

5    F.3d 608 (9th Cir. 2004) (applying Cal. law).  The plaintiff in *Upper Deck* sued its insurer for

6    breach of duty to defend in the underlying class action for RICO violations against the insured.

7    The RICO action alleged that the insured's practice of inserting "chase cards" in packs of trading

8    cards amounted to illegal gambling.  *Id*. at 610-11.  The insured relied on the bodily injury

9    coverage in the policy, *id*. at 611, the allegation that "[m]any of the persons who purchase Upper

10   Deck's card packages in search of valuable chase cards are children and teenagers, who may

11   spend up to several hundred dollars per month on the habit," and two generic class action

12   allegations -- whether Upper Deck's violations caused injury to the class members and what was

13   the appropriate measure of damages, *id*. at 614.  Upper Deck argued that these allegations and

14   extrinsic evidence gave rise to potential coverage because one could infer that some class

15   members could become addicted to gambling, a bodily injury as defined by the policy.  *Id*.  The

16   court disagreed based on the attenuated nature of this inference.  It found that it was "tenuous

17   and farfetched" to claim that the word "habit" was used to mean "addiction."  *Id*. at 615.  In

18   addition, the generic class action allegations were not sufficient and in fact contradicted an

19   inference that some of the class members, unlike the class representative, suffered from

20   gambling addiction.  *Id*.  The court also added that the complaint did not seek bodily injury

21   damages as required by the insurance policy.  *Id*.  It found that the complaint could not be

22   amended so as to create a potential for coverage because "any such amendment must be

23   supported by the facts already pled in the complaint."  *Id*.  (citation omitted).  "To support a

24   finding of potential liability, the plaintiffs would need to allege *new facts* for bodily injury."  *Id*.

25   (emphasis in original).

26        Unlike in *Upper Deck*, the complaint in the Lopez Action could be amended because any

27   such amendment would be supported by facts already alleged.  The complaint contained specific

28   allegations of several publications of defamatory statements.  Golden Eagle argues that the

05cv1853

1  complaint in the Lopez Action would have to allege special damages to create potential

2  defamation coverage.  This argument is based on the premise that the standard applicable to the

3  duty to defend requires the allegation of all the elements of a cause of action, which is false.  *See*

4  *Scottsdale*, 36 Cal. 4th at 654; *Barnett*, 90 Cal. App. 4th at 510.  Moreover, the court "look[s]

5  not to whether noncovered acts predominate in the third party's action, but rather whether there

6  is *any* potential for liability under the policy."  *Horace Mann*, 4 Cal. 4th at 1084; *see also*

7  *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002)

8  (applying Cal. law) ("courts have repeatedly found that remote facts buried within causes of

9  action that may potentially give rise to coverage are sufficient to invoke the defense duty").

10  Accordingly, Golden Eagle's argument is rejected.

11      Golden Eagle's reliance on *Upper Deck* and pleading of special damages is unavailing for

12  another reason.  Duty to defend is contractual, and therefore depends on the policy language.

13  *Scottsdale*, 36 Cal. 4th at 645-55.  Unlike the holding in *Upper Deck*, which is based entirely on

14  the bodily injury coverage provision of the policy at issue, *Upper Deck*, 358 F.3d at 610,[4] the

15  issue in the instant case is personal injury coverage.  While bodily injury in *Upper Deck* had to

16  be caused by an occurrence, *id.* at 611, this is not the case with personal injury coverage here.

17  The Policy here applies to personal injury "caused by an offense arising out of [the insured's]

18  business . . . ."  (Dawe Decl. Exh. 19 at 196.)  It defines personal injury as injury "arising out of

19  one or more of the following offenses:  [¶] Oral or written publication of material that slanders

20  or libels a person . . . ."  (*Id.* at 203).  Based on language identical in all pertinent regards,

21  California courts hold that personal injury coverage

22      is not determined by the nature of the damages sought in the action against the
insured, but by *the nature of the claims* made against the insured in that action.
23      Under the personal injury policy  provision, coverage is triggered by the offense,
not the nature of injury or damage which a plaintiff suffers. . . . [¶] Unlike
24      coverage for bodily injury and property damage, which is "occurrence" based,
there is no requirement for personal injury coverage that there be an "accidental"
25      occurrence.  All that is required is that the injury arise out of the conduct of the

26  / / / / /

27

28  _____

    [4]      Golden Eagle acknowledges this in its motion.  (*See* Golden Eagle Mtn at 20).

1          insured's business. . . . The triggering event is the insured's *wrongful act*, not the
resulting injury to the third party claimant.[5]

2

3  *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) (internal citations,

4  quotation marks and alterations omitted, emphases in original); *see also id.* at 1026 (policy

5  language).  Similarly, in *Barnett v. Fireman's Fund Insurance Company* the court held, based on

6  an identical coverage clause, that allegations in the complaint, which did not include a

7  defamation cause of action but included allegations that the insured made disparaging and

8  defamatory statements about the plaintiff in the underlying action "trigger[ed] at least a potential

9  for coverage for defamation provided by the CGL policy."  90 Cal. App. 4th at 510 & n.5.

10  Accordingly, Golden Eagle's argument that any potential for coverage is thwarted because the

11  Lopez Action does not sufficiently allege defamation damages is rejected on this ground as well.

12       The Lopez Action alleged sufficient facts to raise a potential for coverage under the

13  personal injury coverage provision and trigger Golden Eagle's duty to defend.  "[I]f a single

14  issue exists which is even potentially within the policy coverage, [the insurer] has a duty to

15  defend . . . [the] action in its entirety."  *Charles E. Thomas Co. v. Transam. Ins. Group*, 62 Cal.

16  App. 4th 379, 382 (1998) (citing *Buss v. Super. Ct. (Transam. Ins. Co.)*, 16 Cal. 4th 35, 48

17  (1997); *see also Horace Mann*, 4 Cal. 4th at 1081 ("Once the defense duty attaches, the insurer

18  is obligated to defend against all of the claims involved in the action, both covered and

19  noncovered . . . ."); 1084; *Gray*, 65 Cal. 2d at 276 n.15.  Accordingly, the court need not consider

20  Federal's other arguments why Golden Eagle owed a duty to defend.  For the same reasons,

21  Golden Eagle's argument that any particular cause of action alleged in the Lopez action is not

22  covered, including its argument that discrimination may potentially be excluded by California

23  Insurance Code Section 533 pursuant to *B&E Convalescent Ctr. v. State Comp. Ins. Fund*, 8

24  Cal. App. 4th 78 (1992),[6] is unavailing.  Because there is potential coverage under the personal

25

26         [5]     Golden Eagle concedes this point.  (Golden Eagle Mtn at 11.)

27         [6]     *See* Golden Eagle Mtn at 15.  In addition, contrary to Golden Eagle's argument
(*see* Golden Eagle Mtn at 19), the alleged derogatory comments did not exclusively focus on the

28  plaintiffs' national ancestry and heritage.  Some of the comments were directed to their honesty
and integrity independently of their ancestry and heritage.

injury provision, Golden Eagle's argument that other parts of the Policy do not provide coverage is irrelevant.  Accordingly, the court need not consider Golden Eagle's arguments pertaining to property damage coverage and Exclusion m to that coverage.[7]  Furthermore, although extrinsic facts may eliminate the potential for coverage, *N. Am. Bldg. Maint.,* 137 Cal. App. 4th at 637, the court need not consider any such facts in this case, because Golden Eagle has not offered any evidence, and has not argued, in support of this point.

In addition to arguing that Golden Eagle owed a duty to defend, Federal maintains Golden Eagle breached its duty.  "The broad scope of the insurer's duty to defend obliges it to accept the defense of a suit which potentially seeks damages within the coverage of the policy." *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000) (quoting *Gray*, 65 Cal. 2d at 275 & *Horace Mann*, 4 Cal. 4th at 1081) (internal quotation marks and ellipsis omitted).  "The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Scottsdale*, 36 Cal. 4th at 655.  Although Golden Eagle vigorously argued in the opposition to Federal's motion and in support of its own motion that it did not owe a duty to defend, it did not argue that, in the event the court found it owed a duty, it did not breach it.  The court finds Golden Eagle breached its duty at the very least when it formally withdrew from defense.

For the foregoing reasons, the court finds that Golden Eagle owed a duty to defend in the Lopez Action, and that it breached that duty.  Federal's motion for partial summary judgment is **GRANTED**, and Golden Eagle's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

DATED:  June 26, 2007

M. James Lorenz
United States District Court Judge

---

[7]  Exclusion m is contained only in Coverage A part of the Policy, which includes property damage coverage. (Dawe Decl. Exh. 19 at 193, 196.)  The Policy does not contain this exclusion under Coverage B, which includes personal injury coverage. (*See id*. at 196-97.)

05cv1853

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

05cv1853