# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| FEDERAL INSURANCE COMPANY, | CASE NO. 05-CV-1853-MMA (LSP) |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| GOLDEN EAGLE INSURANCE CORPORATION, | [Docket Nos. 45 & 49] |
| Defendant. | |

In this dispute between two insurance companies, Plaintiff Federal Insurance Company ("Federal") seeks reimbursement from Defendant Golden Eagle Insurance Corporation ("Golden Eagle") for $3.1 million paid to defend and settle the underlying state court lawsuit (the "*Lopez* Action") for their mutual insured Emerald Bay Community Association ("Emerald Bay"). The Court previously determined that Golden Eagle had breached its duty to defend by abandoning its insured in the midst of the *Lopez* Action. Order Granting Plaintiff's Motion for Partial Summary Judgment (hereinafter "*Duty to Defend Order*"). [# 40] Now before the Court are cross motions for summary judgment on the remaining issues of whether and how much Golden Eagle should reimburse Federal for those defense and indemnification payments. The Court found the motions suitable for resolution without oral argument because the result depends upon questions of law. Civ.L.R. 7.1(d)(1). For the reasons stated below, the Court concludes that Golden Eagle must reimburse Federal for all of the defense costs, but none of the settlement costs.

Background

A. Underlying Litigation

The plaintiffs in the underlying action, Diana and George Lopez, own a home in a gated community which is governed by a homeowner's association. Emerald Bay and its board of directors enforce the covenants, conditions, and restrictions ("CC&Rs") on structures and landscaping. In 1993, the Lopezes sought Emerald Bay's approval to construct a pool, spa, and landscaping at their ocean-front home. The contentious approval process dragged on for years. In 1998, Emerald Bay stopped all work on the Lopezes' project. GEIC at 152.[1] That decision prompted the Lopezes to sue. They contended that Emerald Bay wrongfully delayed and denied their plans to remodel while permitting other residents to construct larger projects. *Id.* at 139; *see also id.* at 157. The Lopezes' lawsuit against Emerald Bay alleged causes of action to enforce the CC&Rs as equitable servitudes, for breach of contract, breach of the implied covenant of good faith and fair dealing, and gross negligence. *Id.* at 162-69. They also sued to enforce their right to access the beach, which was obstructed by a neighbors' landscaping. *Id.* at 160-61 & 170. In addition, the Lopezes alleged that Emerald Bay discriminated against them in violation of the Unruh Act because George Lopez was the only Hispanic living in the community. As evidence, the *Lopez* Action alleged that members of the board of directors had referred to them as the "Mexicans at 166" and told other residents they were "dishonest." *Id.* at 138 & 140; *see also id.* at 149 (underhanded and untrustworthy).

Emerald Bay tendered the defense of the *Lopez* Action to Golden Eagle pursuant to its Commercial General Liability Policy which covered property damage and personal injury subject to definitions and exclusions. *Id.* at 255-83 (hereinafter "Golden Eagle CGL Policy"). The defense obligation was not otherwise limited, and the "other insurance" clause provided that it was primary coverage. *Id.* at 258 ¶ 1(a), 261 ¶ 1(a), 262-63 ¶ 1, 265-66 ¶ 4(a), & 270.

---

[1]The exhibits have several page numbers. The Court adopts the citation format of referring to the consecutive page numbers used by the parties. For example, Golden Eagle used the format in its Notice of Lodgment, which is consecutively numbered from page 1 to 760, and Federal used the exhibit number with the consecutive page number.

The operative complaint in the underlying action is the Second Amended Complaint; however, the material allegations remain constant. GEIC at 4-172 (original, first and second amended complaints).

Emerald Bay also tendered the defense to two policies issued by Federal, first, an association liability, errors and omissions, or directors' and officers' ("D & O") liability insurance policy, and second, an excess/umbrella policy. *Id. at* 174-238 (Compl. ¶¶ 10-14 & Exs. 2 & 3). The Federal Association Liability Policy covered wrongful acts and personal injury as defined, and included defense costs in its coverage limits and an excess insurance clause. *Id.* at 187 ¶¶ 1.1, 1.2, 189 ¶ 5.2, & 190 ¶ 7.1 (hereinafter "Federal D & O Policy"). The Federal Umbrella Policy, a classic secondary policy, provided excess follow form liability coverage and specified umbrella liability coverage. *Id.* at 205 (hereinafter "Federal Excess Policy").

Golden Eagle initially accepted Emerald Bay's tender of the *Lopez* Action subject to a strict reservation of rights, but the next year, in 1999, it formally withdrew any obligation to defend or indemnify.[2] Dawe Decl. Ex. 17; Birney Decl. Ex. 2. Golden Eagle had paid about $244,930 of legal expenses. Dawe Decl. Ex. 21 at 262-63; Birney Decl. ¶ 5 & n.2.

Thereafter, Federal defended the *Lopez* Action on its own at a cost of $1,175,132.53. Birney Decl. ¶¶ 3-5 & Ex. 1; *e.g.*, GEIC at 699-713 (Emerald Bay's mediation brief), 295-455 (depositions), & 488-640 (interrogatories). When the case concluded in late 2001, Federal funded the entire $2 million settlement on Emerald Bay's behalf. Meyer Decl. ¶ 10.

B. This Lawsuit

In the instant action, Federal sued Golden Eagle for equitable contribution and equitable subrogation or indemnity as to both the defense costs and the settlement payment.

In its prior summary judgment order, the Court held that Golden Eagle had a duty to defend the *Lopez* Action because alleged facts that Emerald Bay made disparaging remarks

---

[2]Golden Eagle's coverage analysis changed over time. Golden Eagle's initial decision was based on possible coverage for the Lopezes' claims that they lost the use of their home and the right to private occupancy (even though the discrimination theory was not covered by the CGL Policy). Dawe Decl. Ex. 17-188 (June 15, 1999). Later, Golden Eagle concluded it was "unable to provide [Emerald Bay] with a defense or indemnification" because Emerald Bay's wrongful acts were not "accidental"; the property damage did not cover economic losses; and Emerald Bay did not own the occupied premises. Birney Decl. Ex. 2 at 12-16. Federal presented testimony by Golden Eagle employees who described the conflicting opinions on coverage issues. *E.g.*, Dawe Decl. Ex. 13 at 148 (Judith Hess Depo.); *id.* Ex. 16 at 162 (Claim Activity Log by Rich Hogan); *id.* Ex. 16 at 170 (same by Pamela Fetchina); *id.* Ex. 16 at 180 (John Filler e-mail).

1  raised a *potential* for coverage under Golden Eagle's "personal injury" provision. *Duty to*
2  *Defend Order* at 5.  There was potential personal injury coverage for "[o]ral or written
3  publication of material that slanders or libels a person." *Id.* "The complaint contained specific
4  allegations of several publications of defamatory statements." *Id.* at 6.  The Court held that
5  the Golden Eagle CGL Policy by its own terms applied when a personal injury "arising out of"
6  the wrongful act or conduct of Emerald Bay's business was alleged. *Duty to Defend Order* at
7  7-8.  Furthermore, the Court held Golden Eagle breached its duty when it formally withdrew
8  from the defense while the *Lopez* Action was in the midst of discovery. *Id.* at 9.

9        The parties now seek to resolve the remaining issues in these cross motions for
10 summary judgment.  The parties dispute whether the Golden Eagle CGL Policy covered the
11 *Lopez* Action so as to trigger a duty to reimburse Federal for all or part of the $2 million
12 settlement.  They also seek a determination of the amount of the $1.1 million defense costs that
13 Golden Eagle should contribute.

14 Discussion

15       Summary judgment is appropriate when the "pleadings, depositions, answers to
16 interrogatories, and admissions on file, together with the affidavits, if any, show that there is
17 no genuine issue as to any material fact and that the moving party is entitled to judgment as
18 a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

19       "The duty to defend is broader than the duty to indemnify." *Scottsdale Ins. Co. v. MV*
20 *Transp.*, 36 Cal. 4th 643, 654 (2005).  The duty to defend runs to claims that are merely
21 *potentially* covered and "may exist even where coverage is in doubt and ultimately does not
22 develop." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (quotations
23 omitted).  An insurance company's duty to defend is evaluated from the perspective of the
24 facts known at the time the lawsuit is tendered and extends to claims that could be added in the
25 future. *Id.* at 295-96; *Scottsdale*, 36 Cal. 4th at 654 ("Moreover, that the precise causes of
26 action pled in the third-party complaint may fall outside policy coverage does not excuse the
27 duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the
28 complaint could fairly be amended to state a covered liability.").  "An insurer may even be

liable for a judgment on a claim for which no coverage existed where it breached the duty to defend because otherwise an insurance carrier could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification." *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 713 n.6 (2002) (quotation omitted).

The duty to defend may be uncertain at the outset of litigation, but once the underlying suit is fully resolved, an insurer's obligation to *indemnify* under the terms of the policy can be determined with certainty. *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 271-72 (1966); *County of San Bernardino v. Pacific Indemnity Co.*, 56 Cal. App. 4th 666, 684 (1997). The duty to indemnify can be "conclusively" defined once the underlying action concludes. *San Bernardino*, 56 Cal. App. 4th at 684; *Tradewinds*, 97 Cal. App. 4th at 712-13 ("In evaluating indemnity in this instance, because the [underlying] matter has concluded, we are not concerned with the potential for coverage (the criterion for evaluating duty to defend claims) but whether the language of the policy actually supports coverage."). Nonetheless, "[e]ven if coverage is ultimately denied and hence there is no duty to indemnify, the insured may nonetheless recover the costs incurred in defense of the action." *Tradewinds*, 97 Cal. App. 4th at 713.

Golden Eagle bears the burden of proving that its CGL Policy does *not* cover any of the causes of actions that were resolved in the final judgment. *Safeco Ins. Co. of Am. v. Superior Court*, 140 Cal. App. 4th 874, 881 (2006) (the "recalcitrant" insurance company has the burden of proof to establish no coverage but "must contribute to the settlements only if there was actual coverage under its policies"). Indeed, because Golden Eagle wrongfully failed to provide a defense, an evidentiary presumption arises that Golden Eagle is liable for the $2 million dollar settlement. *Isaacson v. California Ins. Guarantee Ass'n*, 44 Cal. 3d 775, 791-92 (1988). Golden Eagle is free to raise coverage defenses to meet its burden of proving that it has no duty to indemnify Emerald Bay. *Id.* at 791; *Safeco*, 140 Cal. App. 4th at 881 (non-participating insurer retains right to raise affirmative defenses); *Tradewinds*, 97 Cal. App. 4th at 713; *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1595-97 (1994) (equitable subrogation subject to all defenses that could have been asserted against insured).

"Contractual terms of insurance are honored whenever possible." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 599 (1981); *accord Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995) (insurance policy is a contract); *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 974 (2000) ("courts should not impose an obligation on an insurer that contravenes a provision in its insurance policy"); *Maryland Cas. Co. v. Nationwide Ins. Co.*, 65 Cal. App. 4th 21, 28-29 (1998) (courts enforce obligations, conditions, and scope of particular policy).

A. <u>The Duty to Indemnify</u>

The *Lopez* Action has been completely resolved, and the Court examines Golden Eagle's liability for coverage based on a complete and final record. If Golden Eagle establishes that its CGL Policy does not cover the claims actually litigated, Golden Eagle has no duty to fund any part of the *Lopez* settlement.

1. <u>Property Damage Provision</u>

As the actual claims in the *Lopez* Action were based upon intentional (or negligent) actions and decisions of the Emerald Bay board of directors, there was no "occurrence" or "accident" as defined by Golden Eagle's CGL Policy.[3] The Golden Eagle CGL Policy covers "property damage" only if it is caused by an "occurrence," which is defined as an "accident." GEIC at 258, 268.[4] California courts have consistently concluded that intentional, purposeful, and even careless or negligent decisions do not constitute an "accident." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 748 (1993) (when policy does not further

---

[3]This analysis renders irrelevant many of the remaining arguments. For example, the Court does not reach the subsidiary arguments about the application of "loss of use of tangible property" or exclusion "m."

[4]Coverage A states that Golden Eagle "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or *'property damage'* to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance *does not apply*. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." GEIC at 258 § 1(a) (emphasis added). "This insurance applies to . . . 'property damage' *only if the . . . 'property damage' is caused by an 'occurrence.'" Id.* § 1(b) (emphasis added). "'Occurrence' *means an accident*, including continuous or repeated exposure to substantially the same general harmful conditions." GEIC at 268 ¶ 13 (emphasis added); *see also* GEIC at 258 (excluding "expected or intended" property damage).

define "accident," it means "unexpected" or "unintended"); *Giddings v. Industrial Indem. Co.*, 112 Cal. App. 3d 213, 220 (1980) (corporate decisions were purposeful, not accidental).

The *Lopez* Action depended upon intentional decisions by Emerald Bay's board of directors in the course of reviewing, disapproving, and denying the Lopezes' construction plans. GEIC at 139 (Complaint describes Emerald Bay's actions as claiming that the construction plans were inadequate, demanding additional plans, failing to review in accordance with standards, subjecting project to greater scrutiny, and falsely accusing the Lopezes of not complying with process); *id.* at 241-42, 245-48 (Lopez mediation brief analyzes the misconduct and discriminatory actions of Emerald Bay and resulting damages). Six of the seven causes of action in the *Lopez* Action rely on intentional conduct of Emerald Bay.[5] GEIC at 134 & 162-70. As Golden Eagle observes, "a board of directors cannot 'accidentally' but repeatedly deny a remodeling application by a homeowner." Def.'s Opening Br. at 7. The Unruh Act claim for discrimination is based on intentional, not accidental, conduct by Emerald Bay, and is not covered by Golden Eagle's Policy. *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 943 (2003) (discrimination is not an accident).

The cause of action for gross negligence fares no better because "negligence" does not equate with "accident" when the conduct is "necessarily nonaccidental" or "could not be engaged in by 'accident.'" *Quan v. Truck Ins. Exch. Co.*, 67 Cal. App. 4th 583, 596 (1988) (citation omitted).

The Court rejects Federal's arguments that attempt to fit the facts into the definition of accident. First, the clause that modifies the definition of accident to include "continuous or repeated exposure to substantially the same general harmful conditions" enlarges the meaning to include gradual events as well as sudden accidents. *Shell Oil*, 12 Cal. App. 4th at 749. The Golden Eagle CGL Policy "nevertheless maintain[s] a basic requirement that such events be *accidents*." *Id.* (emphasis added); *Waller*, 11 Cal. 4th at 15-17 ("concept of fortuity" is basic

---

[5] The cause of action for obstruction of beach access is not alleged against the insured; instead, the neighbor was named as the defendant in that claim. GEIC at 170; Def.'s *Notice of Errata*. The Lopezes challenged Emerald Bay's role in the easement dispute under the theory that Emerald Bay failed to enforce the CC&Rs. GEIC at 163.

1  to CGL policy that restricts coverage to damages caused by an accident).

2  Second, the fact that Emerald Bay's intentional decision to stop work on the Lopez
3  construction project may have led to damages, such as soil slippage, and exposure to salt air,
4  and rain, does not trigger the "property damage" provision. Emerald Bay intended its conduct
5  to delay and deny the remodeling project. The unintended damage to the home was a
6  *consequence* of the allegedly wrongful act, not the causal event itself. *Waller*, 11 Cal, 4th at
7  23; *Shell Oil*, 12 Cal. App. 4th at 750; *Stein-Brief Group, Inc. v. Home Indem. Co.*, 65 Cal.
8  App. 4th 364, 370-72 (1998) (no CGL coverage or duty to defend when alleged damage
9  flowed from non-accidental acts). Emerald Bay's conduct toward the Lopezes is analogous
10 to the employer who fires an employee, who then suffers emotional distress. In *Commercial*
11 *Union Ins. Co. v. Superior Court*, 196 Cal. App. 3d 1205, 1206-07 (1987), the CGL policy
12 contained the same definition of "accident" as the policy in the instant case. The court held
13 that the term "accident" refers to the act itself, *i.e.*, the intentional decision to fire, and not the
14 act's direct and immediate "consequence," *i.e.*, the employee's unexpected severe emotional
15 distress. *Id.* at 1206-09; *Shell Oil*, 12 Cal. App. 4th at 749-51. Here, the compensation the
16 Lopezes sought for damages to the home were not covered because they flowed from the *same*
17 *non-covered acts* of Emerald Bay to delay and deny the construction project based on their
18 interpretation and enforcement of the CC&Rs.

19 Finally, Federal fails to support its argument that the doctrine of estoppel bars Golden
20 Eagle from denying coverage. *See Waller*, 11 Cal. 4th at 34 (estoppel requires detrimental
21 reliance).

22  2. Personal Injury Provision

23 The Court also concludes that Golden Eagle did not have a duty to *indemnify* the
24 *potential* slander claim that *never materialized* in the *Lopez* Action. "[W]hile an insurer has
25 a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only
26 where a judgment has been entered on a theory which is actually (not potentially) covered by
27 the policy." *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994).

28 George Lopez testified in his deposition that the disparaging remarks had damaged his

family's reputation in the Emerald Bay community.  Pl.'s Ex. 4 at 75-77, 88.  This evidence, which was available at the time Golden Eagle withdrew its commitment, shows Golden Eagle's *potential* liability which created its separate duty to *defend* because the Lopezes *could have* alleged a slander cause of action.  In the end, they did not do so.  *Collin*, 21 Cal. App. 4th at 803; *cf. Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) (discussing duty to defend potentially covered claims and concluding "there was no potential liability based on the possible disparagement in these advertisements, because Green Hills elected not to make that claim").

Instead, the *Lopez* Action relied on the disparaging comments as support for their claim for discrimination.  *E.g.*, GEIC at 140-41 & 164-65 (Unruh Act).  Nonetheless, the record demonstrates that although the Lopezes contended that Emerald Bay's actions were motivated by racial prejudice, they did *not seek damages* for the Unruh claim or any injury to their reputation.  *Id.* at 242-48.  They only sought economic damages for the loss of enjoyment of their property, the increased construction costs from the many delays, and the diminution in the value of the home from their inability to remodel as they desired.  *Id.* (Lopez mediation brief lists elements of damage sought); Meyer Decl. Ex. 7 at 225, 228 (expert witness appraises construction costs and diminution in value).

Golden Eagle has met its burden of proving that there was no coverage for a slander claim that was never actually made in the underlying lawsuit nor for reputation damages that were never actually sought in the settlement.  Def.'s Opening Br. at 16 ("There can be no actual coverage for a claim which was never pursued.").

In sum, the Court concludes that Federal cannot recover all or part of the $2 million settlement because Golden Eagle has met its burden of proving the absence of coverage for the claims resolved in the *Lopez* Action.  The Court **GRANTS IN PART** Golden Eagle's motion for summary judgment and **DENIES** Federal's cross-motion for summary judgment on the first and third claims for equitable contribution or subrogation as to the settlement.

B.  Duty to Defend

Golden Eagle must contribute to the defense costs that Federal paid on behalf of

Emerald Bay. The Court already determined, as a matter of law, that Golden Eagle breached its contractual duty to defend the factual allegations supporting a potential slander claim when Golden Eagle withdrew from the ongoing *Lopez* Action in June 1999. *Duty to Defend Order* at 9. "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely." *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997). "The defense duty is a *continuing* one, arising on tender of defense and lasting until the underlying lawsuit is concluded or *until it has been shown* that there is *no* potential for *coverage*." *Montrose*, 6 Cal. 4th at 295 (emphasis added). Even though that "phantom" claim was not, in the end, asserted or made a part of the settlement in 2001, the independent duty to defend "may exist even where coverage is in doubt and ultimately does not develop." *Montrose*, 6 Cal. 4th at 295.

Golden Eagle *could have* taken a "safer course" to protect its interest and possibly extinguish its duty to defend at an earlier point in time. *Buss*, 16 Cal. 4th at 59. Golden Eagle *could have* funded the defense and kept detailed records of expenses relating to any potentially covered claim (such as slander). Then, once the *Lopez* Action concluded, Golden Eagle *could have* sought reimbursement for defense costs on the non-covered claims. *Id.* at 49 ("the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered" and "the insurer may indeed seek reimbursement for defense costs"); *Tamrac, Inc. v. California Ins. Guarantee Ass'n*, 63 Cal. App. 4th 751, 752, 758-59 (1998) (discussing avenues for insurer to recover defense costs after judgment in underlying action). Alternatively, Golden Eagle *could have* promptly filed a declaratory judgment action to confirm its view that none of the claims in *Lopez* were covered by its CGL Policy. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1086 (1993) (declaratory relief action available); *Montrose*, 6 Cal. 4th at 295, 300 (duty to defend may be "extinguished" if insurer proves that no claim can in fact be covered).[6]

---

[6] Had Golden Eagle abided by its contractual duty to provide a defense, it *could have* argued the weaknesses it perceived in the underlying complaint. Golden Eagle cannot now raise such defenses to the *Lopez* Action. *Horace Mann*, 4 Cal. 4th at 1086; *San Bernardino*, 56 Cal. App. 4th at 686-87. The Court does not address Golden Eagle's arguments that Emerald Bay's opinions were protected by First Amendment or were otherwise not actionable. Def.'s Opening Br. at 16-19.

(continued...)

Instead, Golden Eagle broke its contractual promise to defend and elected to abandon the common insured. Golden Eagle's breach of its duty to defend has consequences. Golden Eagle bears the burden of identifying specific defense costs that are not its responsibility. *Cf. Buss*, 16 Cal. 4th at 52-53 (when an insurer defends a mixed case with a reservation of rights, it bears the burden by preponderance of evidence of allocating defense costs between non-covered and potentially covered claims); *Safeco*, 140 Cal. App. 4th at 881 (when a duty to defend is shown, the "recalcitrant coinsurer waives the right to challenge the reasonableness of defense costs"). Of course, Golden Eagle *cannot* recover defense costs attributable to the potentially covered slander claim. *Buss*, 16 Cal. 4th at 49 ("As to the claims that are at least potentially covered, the insurer may not seek reimbursement for defense costs.").

As stated, Golden Eagle's duty to defend arose when Emerald Bay tendered the lawsuit in 1998. That duty to defend continued throughout the extensive discovery, mediation, and settlement of the *Lopez* Action in November 2001. Both the Golden Eagle CGL Policy and the Federal D&O Policy covered the potential slander injury. *Duty to Defend Order* at 5-9; GEIC at 187. The common insured ultimately did not suffer damages because Federal funded the defense from beginning to end. *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078 (2005). Federal paid defense costs of $1.1 million compared to Golden Eagle's $245,000 contribution. Golden Eagle's duty to defend continued unless and until either the Lopez Action concluded (November 2001) or Golden Eagle presented sufficient "evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Horace Mann*, 4 Cal. 4th at 1081; *accord Aerojet-Gen. Corp. Transport Indem. Co.*, 17 Cal. 4th 38, 58 (1997) (duty to defend is discharged when the underlying action concludes, it can be extinguished earlier if the insurer shows no claim can in fact be covered) & 64 (preponderance of evidence standard applies, despite use of phrase "undeniable" evidence in *Horace Mann*). The doctrine of equitable subrogation permits an insurer who paid for a loss to "step into the shoes" of the insured and obtain repayment from party who abandoned the

---

[6](...continued)
In addition, Golden Eagle *could have* accepted Federal's offer to share half of the defense costs, but it rejected the compromise. Dawe Decl. Ex. 12 at 128-29 (Sipos Depo).

insured. *Fireman's Fund*, 21 Cal. App. 4th at 1595-97.

In determining the amount, if any, of defense costs that Golden Eagle, in equity, should bear, the Court will follow the express terms of the insurance policies. *Olympic*, 126 Cal. App. 3d at 597-600 & n.2. A policy defined as "excess" is not obligated to contribute unless and until the insurance policy defined as "primary" has been exhausted. *Id.* at 602; *Herrick Corp. v. Canandian Ins. Co.*, 29 Cal. App. 4th 753, 761 (1994). Here, the "other insurance" clauses in the policies are unambiguous. Golden Eagle promised primary coverage and it collected premiums that compensated for the potential cost of defending even a frivolous or groundless slander suit. GEIC at 265 (exceptions do not apply). By contrast the Federal D&O Policy is expressly excess. *Id.* at 190, ¶ 7.1; *see id.* at 205 (Federal Excess Policy). The "other insurance" clauses do not conflict, hence, the Court enforced the plain terms. *Olympic*, 126 Cal. App. 3d at 602. Golden Eagle had the *primary* obligation to fund defense costs accruing in the Lopez Action from the time it accepted the tender until that duty was extinguished. *See Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 367-68 (1980); *Olympic*, 126 Cal. App. 3d at 600-02 (courts should apportion defense costs pursuant to clear terms in policies) (citing *Lamb v. Belt Cas. Co.*, 3 Cal. App. 2d 624 (1935)).

Moreover, the Court finds Golden Eagle has not met its burden to allocate any of the expenses in a manner that would "whittle down" the amount of the defense costs. *Arenson v. National Auto. & Cas. Ins. Co.*, 48 Cal. 2d 528, 539 (1957). The only argument it offers is that its 16% contribution was reasonable. Def.'s Opp. Br. at 29-30. As a result, the Court concludes that Golden Eagle is responsible for the entire $1.1 million defense cost.

Golden Eagle complains that the result is unfair because it has now conclusively eliminated any duty to indemnify the claims in the *Lopez* Action. That argument ignores the difference between the defense and indemnity duties. They are independent obligations. *E.g.*, *Aerojet-Gen.*, 17 Cal. 4th at 58 (duty to defend "arises as soon as tender is made, before liability is established and apart therefrom") (citation omitted). Golden Eagle breached its duty to defend Emerald Bay; consequently, the $1.1 million legal bill is presumed reasonable. *Arenson*, 48 Cal. 2d at 539; *American Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th

864, 875 (1998). Golden Eagle has not presented evidence to meets its burden of persuasion to allocate the defense costs by any other measure. *Buss*, 16 Cal. 4th at 53 ("An insurer is only entitled to recover those defense expenses which can be fairly and reasonably allocated *solely* to noncovered claims for which there never was any potential for coverage."). As a recalcitrant, non-participating insurer, Golden Eagle bore the risk and the equities favor Federal. *Continental Casualty Co. v. Zurich Ins. Co.*, 57 Cal. 2d 27, 37 (1961). Public policy encourages insurance companies to fulfill their obligations. *Arenson*, 48 Cal. 2d. at 539. Federal observes that because it fulfilled its obligation to defend the entire action, Golden Eagle did not risk a bad faith lawsuit by the common insured. *Continental*, 57 Cal. 2d at 37 (rejecting possible windfall to insurer who declined to defend); *Shade Foods Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000) ("a belated offer to pay defense costs may mitigate damages but will not cure the initial breach of duty" to defend at the outset). The Court **DENIES IN PART** Golden Eagle's motion for summary judgment and **GRANTS** Federal's cross-motion for summary judgment on the second and fourth claims for equitable contribution or subrogation as to defense costs. *See Herrick*, 29 Cal. App. 4th at 761.

C. Prejudgment Interest

Federal seeks prejudgment interest on the $1.1 million defense costs from November 2001 when Emerald Bay settled the *Lopez* Action under a California statute. Cal. Civ. Code § 3287(a). "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable." *Esgro Cent., Inc. v. General Ins. Co.*, 20 Cal. App. 3d 1054, 1060 (1971). Federal's rights are created in equity, therefore, the amount of Golden Eagle's contribution (*i.e.*, whether all, part, or none) was unknown. *E.g.*, *Presley Homes, Inc. v. American States Ins. Co.*, 90 Cal. App. 4th 571, 576 (2001) ("an insurer's duty to defend the entire action is based on public policy"). The Court denies the request.

Conclusion

1  Upon due consideration of the memoranda and exhibits and for the reasons set forth
2  above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's and Defendant's
3  motions for summary judgment.
4  The Clerk shall enter judgment in favor of Plaintiff in the amount of $1,175,132.53 and
5  terminate this civil action.
6  Plaintiff awarded court costs.  Fed. R. Civ. P. 54(d)(1).
7  **IT IS SO ORDERED**.
8  DATED: May 14, 2009

*[signature]*

Hon. Michael M. Anello
United States District Judge